LAND, Justice.
 

 In the year 1917 the police jury of the parish of Ouachita, acting under Act No. 221 of 1902, called a local option election to take the sense of the qualified voters of that parish on the proposition of the sale or nonsale of intoxicating liquors therein from and after January 1,1920.
 

 A majority of the qualified voters of the parish having voted to prohibit the sale of intoxicating liquors within its limits, the police jury adopted Ordinance No. 677, making it unlawful, on and after January 1, 1920, to issue any license for the sale in Ouachita parish of intoxicating liquor, or for any one to sell or offer for sale intoxicating liquor within the limits of the parish.
 

 The Eighteenth Amendment was ratified by the thirty-sixth state on January 16, 1919, and took effect on January 16, 1920. This amendment, in its second section, vested in “Congress and the several States * * * concurrent power to enforce this article by appropriate legislation,” and in 1921, by Act No. 39 of the Extra Session for that year, the General Assembly adopted “The Hood Bill,” which was designed to enforce the Eighteenth Amendment in this state.
 

 Prior to the enactment of “The 1-Iood Bill,” there were dry and wet localities in various parts of the state, and prohibition in dry territory had been enforced under Act No. 8 of 1915 (Ex. Sess.), commonly known as “The Blind Tiger Act”; and this is the particular enforcement statute invoked by the state in the present prosecution.
 

 The Twenty-Eirst Amendment, repealing the Eighteenth Amendment and National Prohibition Act (27 TJSCA), was duly ratified and became effective on December 5, 1933.
 

 Defendant is charged by information in this case with violating Act No. 8 of 1915 (Ex. Sess.), “The Blind Tiger Act,” on December 7, 1933, by keeping and having for sale in a certain building in the city of West Monroe; Ouachita parish, and by selling, bonded intoxicating liquor.
 

 It is admitted that defendant, at the time, had a permit or license to sell bonded whisky from the city of West Monroe and from the United States government (the legal effect of these permits or licenses being denied by the state), and had also made application to the sheriff and tax collector for a permit to sell bonded intoxicating liquor, and had been refused.
 

 Defendant filed a motion to quash the information in this case on the ground that Act No. 8 of 1915 (Ex. Sess.), under which defendant is prosecuted, applies only in dry territory, and that on December 7, 1933, the parish of Ouachita was wet territory, and there was no prohibition against the sale of bonded whiskies on that date existing in that parish ; that the parish of Ouachita was wet by virtue of Act No. 221 of 1902, “The Local Option Law,” having been repealed by Act No. 39 of the Extra Session of 1921, “The Hood Bill,” and that, by the repeal of “The Local Option Law,” the effect of all local option elections held pursuant thereto was annulled, and that the parish of Ouachita on that date was therefore wet.’
 

 
 *159
 
 The motion .to quash was overruled by the trial judge. Defendant was tried and convicted, and, from a sentence to pay a fine of $325 and, in default of payment, to serve 30 days in jail, defendant has appealed.
 

 1. The sole issue here involved is one of law, to wit: Whether “The Blind Tiger Act,” Act No. 8 of 1915 (Ex. Sess.), under which defendant is charged, was effective on December 7,1933, in view of the contention made by defendant that “The Hood Bill,” Act No. 39 of the Extra Session of 1921, repealed “The Local Option Law,” Act No. 221 of 1902, and annulled the effect of the local option election held in the parish of Ouachita.
 

 Act No. 221 of 1902 reads as follows: “Be it enacted by the General Assembly of the State of Louisiana, That Sections '1211 and 2778 of the Revised Statutes of 1870 be amended and re-enacted so as to read: ‘That the Police Juries of the several parishes of the State, the municipal authorities of the several villages, towns'and cities, and the City Council of the City of New Orleans
 
 shall have the exclusive poioer
 
 to make such rules and regulations
 
 for the sale or the prohibition of the sale of intoxicating .liquors,
 
 as they may deem advisable,
 
 and to grant or withhold licenses from drinhing houses and shops
 
 within the limit of
 
 the
 
 City, parish, ward of a parish, town or village,
 
 as a majority of the legal voters
 
 of any city, parish, ward of a parish, town or village
 
 may determine by ballot,
 
 and the said ballot shall be taken whenever deemed necessary by the Police Juries of the several parishes, the municipal authorities of the several towns and the City Council of the City of New Orleans,
 
 provided, said election shall not be held oftener than once a year,
 
 and when so held the effect of the said election shall continue in force
 
 until another election
 
 in the parish, ward of a parish, city, town or village is held on the same question; and provided further that whenever an election (is) held under this Section, the majority of votes cast in said ward, if only a ward election has been held, or a majority of the votes cast in a, parish, if an election has been held for a whole parish,
 
 shall be against granting the licenses for the sale of intoxicating liquors, said vote or decision shall control the action
 
 of any ward, city, town or village within the limits of the said ward or parish, as the case may be, as fully and completely as if said election had been held by authority of said city, town or village.’ ” (Italics ours.)
 

 It is clear from the provisions of Act No. 221 of 1902, “The Local Option Law,” that the sale, or the prohibition of the sale, of intoxicating liquors, under that act, was purely a local question, to be determined according to popular will and popular vote, and to be changed locally and often, in line with the current of public sentiment on the subject.
 

 The state had delegated to police juries under Act No. 221 of 1902 “exclusive power to make such rules and regulations for the sale or the prohibition of the sale of intoxicating liquors, as they may deem advisable,” in accordance with the referendum majority vote.
 

 But, when the state- enacted “The Hood Bill,” Act No. 39 of the Extra Session of 1921, in pursuance of its “concurrent power” to enforce the Eighteenth Amendment by “appropriate legislation,” a statute was passed “to prohibit the manufacture, sale, transportation, delivery, possession, advertisement, exportation and importation of intoxicating liq
 
 *161
 
 uors for beverage purposes, and for non-beverage purposes, except where authorized by permit from proper federal authorities, and to provide penalties for the violation of this Act, and to provide for the detection, seizure, and disposition of illegally held liquors and apparatus.”
 

 “The Hood Bill” was a general law of the state. It covered every phase of the liquor traffic. It was state-wide in its operation and effect, and necessarily superseded other statutes on the same subject-matter, in conflict with its provisions and purpose.
 

 In enacting “The Hood Bill,” it is manifest that the state resumed the direct exertion of its plenary police power as to intoxicating liquors.
 

 A general, permanent,' and stringent prohibition statute was enacted, regardless of the established status qf certain parishes as wet, and regardless of any right to referendum in any parish of the state, whether wet or dry, under “The Local Option Law.”
 

 There can be no serious doubt but that, with the enactment of “The Hood Bill,” “The Local Option Law” passed out of existence, as a statute in conflict with the provisions of the general law on the subject, since the right to referendum, in the matter of the sale or the prohibition of the sale of intoxicating liquors, is not only incompatible with, but absolutely destructive of, the plain, fundamental purpose of “The Hood Bill,”
 
 to maintain uniform state-wide prohibition, as an enforcement measure of the Eighteenth Amendment,
 
 which had already established prohibition, nation-wide in its extent.
 

 The local option election held in the parish of Ouachita in the year 1917, under Act No. 221 of 1902, therefore had no legal or valid effect, after the repeal of “The Local Option Law” by “The Hood Bill” in the year 1921.
 

 2. Section 10, the repealing clause of “The Hood Bill,” reads as follows: “This Act shall in no way repeal any part of Act No. 8 of the Special Session of the' General Assembly of 1915, approved July 9th, 1915, commonly called ‘The Blind Tiger Act’ and Act No. 14 of the Regular Session of the General Assembly of 1916, approved June 19, 1916, commonly called the ‘Near Beer Act.’ All other laws or parts of laws in conflict with the provisions of this Act be and they are hereby repealed.”
 

 We are not concerned in this case with “The Near Beer Act.”
 

 By Act No. 1 of the Extra Session of 1933, “The Hood Bill” itself was repealed. Statewide statutory prohibition thereby came to an end.' Local option prohibition had already ceased to exist in this state, on the adoption of “The Hood Bill” in 1921, as Act No. 221 of 1902 was repealed by Act No. 39 of the Extra Session of that year; and “the repeal of a repealing law does not revive the first law.” Oiv. Code, art. 23.
 

 On December 5, 1933, the Twenty-Eirst Amendment, abrogating the Eighteenth Amendment, was duly ratified, thereby repealing that amendment and carrying with it the Volstead Act of October 28, 1919 (27 US CA).
 

 National Prohibition had also ended at that date.
 

 On December 7, 1933, when defendant was charged with violating “The Blind Tiger Act,” Act No. 8 of 1915 (Ex. Sess.) the state was wet as a whole, and, necessarily, the parish of Ouachita was wet.
 

 
 *163
 
 If “The Blind Tiger Act” was not repealed as a part of “The Hood Bill,” in which it was retained as “appropriate legislation,” then it lapsed into a state of “innocuous desuetude,” as “The Blind Tiger Act,” by its own terms, and by the repeated decisions of this court, applied to prohibition territory only, and no such territory existed within the limits of this state on December 7, 1933, when defendant was charged with violating Act No. 8 of 1915 (Ex. Sess.).
 

 Our conclusion is that the trial judge erred in refusing to sustain the motion to quash made by the defendant, as the information filed against him sets forth no crime under the laws of this state.
 

 It is therefore ordered that the conviction and sentence appealed from be annulled and set aside; that the information filed against defendant herein be quashed; and that defendant be discharged from custody and his bond canceled.
 

 ST. PAUL, J., absent.